IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 9, 2014

**MELISSA L. GRAYSON v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2008-A-10    Steve R. Dozier, Judge**

**No. M2013-02842-CCA-R3-PC - Filed September 26, 2014**

The Petitioner, Melissa L. Grayson, appeals as of right from the Davidson County Criminal Court's dismissal of her petition for post-conviction relief. The Petitioner contends that her trial counsel was ineffective (1) for failing to effectively communicate with her and prepare her for trial and (2) for failing to call several witnesses "that would have been beneficial" to her defense. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and TIMOTHY L. EASTER, JJ., joined.

Manuel B. Russ, Nashville, Tennessee, for the appellant, Melissa L. Grayson.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith DeVault, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Rachel Marie Sobrero, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

FACTUAL BACKGROUND

In 2009, the Petitioner was convicted of aggravated assault, two counts of aggravated robbery, and two counts of especially aggravated kidnapping and received an effective seventeen-year sentence to be served at one hundred percent. See State v. Melissa L. Grayson, No. M2011-00648-CCA-R3-CD, 2012 WL 3611821 (Tenn. Crim. App. Aug. 20, 2012), perm. app. denied, (Tenn. Jan. 14, 2013). The evidence at trial established that the Petitioner, along with four co-defendants, was involved in the assault, robbery, and kidnapping of two Hispanic men on July 19, 2007. Id. at *1.

The first victim, Noe Hernandez, testified that he was approached by a white man and an African-American man after returning home from work. Grayson, 2012 WL 3611821, at \*5. One of the men was armed with a gun, and the other man hit Mr. Hernandez in the face. The men demanded all of Mr. Hernandez's money and then forced him into his car. Id. Mr. Hernandez testified that the men drove his car for several minutes before abandoning it. Id. at \*6. As they were driving, Mr. Hernandez could see a green Ford Explorer following them. Two women with "blondish-colored" hair were in the Explorer. Id. The men abandoned Mr. Hernandez's car a few miles away, and they forced him to strip and get into the trunk of the car. Id.

The next victim, Hermilio Morales, testified that he was walking to his apartment when he was approached by two men, one white the other African-American. Grayson, 2012 WL 3611821, at \*2. One of the men had a gun, and they took Mr. Morales's wallet. The men then forced Mr. Morales into "the back seat of a green, four-door vehicle that resembled an Explorer." Id. Mr. Morales testified that there were two "young and white" women in the front of the vehicle. Id. One of the women began to drive, and the men searched through Mr. Morales's pockets. The men then stripped Mr. Morales and began to beat him. The vehicle eventually pulled over, and the men dumped Mr. Morales on the side of the road. Id.

Johnathon Pressley testified that he was one of the co-defendants and that he had participated in the assault, robberies, and kidnappings. Grayson, 2012 WL 3611821, at \*7. Mr. Pressley testified that the green Ford Explorer belonged to the Petitioner and that she was driving on July 19, 2007. According to Mr. Pressley, the Petitioner's sister rode with her in the front of the Explorer, and he and the Petitioner's boyfriend, "T.O." rode in the back. Mr. Pressley testified that he and "T.O." attacked Mr. Hernandez, and the Petitioner followed them as they drove away in Mr. Hernandez's car. Id.

After abandoning Mr. Hernandez's car, Mr. Pressley and "T.O." got back in the Explorer, still being driven by the Petitioner, and went to a nearby apartment complex. Grayson, 2012 WL 3611821, at \*8. Mr. Pressley testified that he and "T.O.," then attacked Mr. Morales and forced Mr. Morales into the Explorer. While the Petitioner drove the Explorer, Mr. Pressley and "T.O." beat Mr. Morales. Mr. Pressley testified that the Petitioner eventually "decided on [a] location, and [that] they dumped [Mr. Morales] on the street." Id.

The Petitioner gave a statement to the police, which was played at her trial. Grayson, 2012 WL 3611821, at \*8. The Petitioner first stated that "she had not had any Mexicans in her car because she did not like them." Id. However, the Petitioner later told the police that on the date of the offense, she had gone to a bar with her sister, Mr. Pressley, and her boyfriend's cousin, "Ducky." The Petitioner claimed that "some Mexican men began throwing rocks at her vehicle," that Mr. Pressley spoke to the men, that one of the men

-2-

voluntarily got into her vehicle, and that they gave him a ride home. Id. The Petitioner denied that the man was robbed or assaulted while in her Explorer. Id.

The Petitioner told the police that after dropping the first man off at his home, she stopped at a store, and Mr. Pressley got out of the vehicle. Grayson, 2012 WL 3611821, at *9. When Mr. Pressley returned to the Explorer, he had his arm around "a Mexican man" who got into the backseat with him. Id. She claimed that while she was driving she heard a "smack" and then "the Mexican man scream." Id. The man removed his pants, and Mr. Pressley told her to drive to the man's apartment, where they let him out. The Petitioner claimed that "all she did was drive" and that "T.O." "had nothing to do with any of the robberies." Id. The Petitioner "maintained that 'Ducky,' not 'T.O.,' was the black man in her vehicle during the commission of these offenses." Id. at *8.

This court affirmed the Petitioner's convictions on direct appeal. Grayson, 2012 WL 3611821. Our supreme court declined to review that decision. The Petitioner filed a timely petition for post-conviction relief, and, with the assistance of counsel, an amended petition for post-conviction relief. The post-conviction court held a hearing on the matter at which the Petitioner, Mantonio Shelton, and trial counsel testified. Following the hearing, the post-conviction court issued a written order dismissing the petition.

The Petitioner testified that she only met with trial counsel on five occasions and that trial counsel never responded to any of the letters she sent him prior to trial. The Petitioner testified that she did not speak to trial counsel for six months after her arrest and that he was dismissive of her questions when she did speak to him. The Petitioner claimed that trial counsel refused to answer her questions regarding his preparations for trial, the discovery materials that had been provided to her, her rights, and the trial process. The Petitioner also claimed that trial counsel never discussed with her what his trial strategy was.

The Petitioner complained that on one occasion, trial counsel sent a paralegal to convey a plea offer from the State. The Petitioner testified that she received two plea offers from the State: one for thirty years to be served at thirty percent if she agreed to testify against her sister and the others for twenty years to be served at one hundred percent. The Petitioner further testified that she would never testify against her sister and that she wanted to take her case to trial because she was innocent. The Petitioner admitted that the sentence she ultimately received was less than either of the State's offers.

The Petitioner testified that she asked trial counsel to call Mantonio Shelton, her co-defendant and boyfriend at the time, to testify on her behalf, but trial counsel failed to do so. The Petitioner further testified that she asked trial counsel to locate and call her friend April Dunn as a witness. The Petitioner explained that she felt the witnesses had mistaken her for

Ms. Dunn. However, Ms. Dunn was never located and was never served with a subpoena to appear at trial. The Petitioner also asked trial counsel to call her parents as character witnesses, but trial counsel refused to do so.

The Petitioner claimed that trial counsel never fully explained her right to testify at trial to her and that she made the decision not to testify at trial because both her father and trial counsel told her not to. The Petitioner asserted that had she testified at trial, she would have testified that she was driving her Explorer during the robberies but that she did not know they were going to happen ahead of time. The Petitioner further asserted that she would have testified that she did not know the robberies were taking place in the back of the Explorer because she had her radio on.

Mantonio Shelton testified that he was the Petitioner's ex-boyfriend and co-defendant. Mr. Shelton testified that prior to the Petitioner's trial, he pled guilty. Mr. Shelton further testified that he contacted the Petitioner's mother and told her that he would testify on the Petitioner's behalf. Mr. Shelton testified that he was present at the Petitioner's trial but never called as a witness and that he never spoke to trial counsel. Mr. Shelton asserted that he would have testified that the Petitioner was not present at the robberies and that she knew nothing about them because he "didn't tell her." Neither Ms. Dunn nor the Petitioner's parents testified at the post-conviction hearing.

Trial counsel testified that he met with the Petitioner in person several times, that he wrote her several letters, and that he spoke weekly with the Petitioner's parents. Trial counsel testified that he answered the Petitioner's questions and discussed with the Petitioner the charges against her, the possible sentencing ranges, the discovery provided by the State, his trial strategy, whether or not she should testify, what witnesses to call, and the plea offers made by the State. Trial counsel also testified that other attorneys in his law firm assisted with the Petitioner's case and that one of the attorneys discussed a plea offer from the State with her.

Trial counsel testified that none of the witnesses were able to identify the Petitioner as being present at the robberies. The only evidence connecting the Petitioner to the robberies was Mr. Pressley's testimony and the Petitioner's statement to the police. Trial counsel described the issue of identity as the "lynch-pin" of his trial strategy and that his goal was to establish that the witnesses "had made a misidentification." Contrary to Mr. Shelton's testimony at the post-conviction hearing, trial counsel testified that he spoke to Mr. Shelton before trial. Trial counsel further testified that Mr. Shelton claimed that the Petitioner was present during the robberies but that she was "not involved." Trial counsel testified that he decided not to call Mr. Shelton because his testimony would further corroborate that the Petitioner was present during the robberies.

-4-

Trial counsel testified that he recalled telling the Petitioner that her parents should not testify as character witnesses because it would open the door for the State to present evidence of her bad character in rebuttal. Trial counsel further testified that he advised the Petitioner not to testify at trial because he was afraid she would have an "attitude" that the jury would respond negatively to. However, trial counsel testified that the Petitioner "absolutely" understood that the decision whether to testify was her choice. Trial counsel also testified that, after the trial, the Petitioner sent him a letter thanking him for all of his help.

In dismissing the petition, the post-conviction court accredited trial counsel's testimony "that he discussed the charges, possible sentences, and trial strategy in depth with the [P]etitioner." The post-conviction court also accredited trial counsel's testimony that he reviewed with the Petitioner her right to testify at trial and that it was the Petitioner's decision not to testify. The post-conviction court further stated that trial counsel's decision not to call Mr. Shelton as a witness was a strategic decision which it would not second guess. The post-conviction court concluded that the Petitioner had failed to prove her claims by clear and convincing evidence.

ANALYSIS

The Petitioner contends that the post-conviction court erred in dismissing her petition for post-conviction relief. The Petitioner argues that trial counsel failed to adequately communicate with her and prepare her for trial. The Petitioner further argues that trial counsel was ineffective for failing to call Mr. Shelton, Ms. Dunn, and her parents as witnesses because their testimony would have bolstered her defense. The State responds that the Petitioner has failed to prove her allegations by clear and convincing evidence and that she has not established that she was prejudiced by any of the alleged errors.

*I. Standard of Review*

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. Because they relate to mixed questions of law and fact, we review the post-conviction court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). In other words, a showing that counsel's performance falls below a reasonable standard is not enough; rather, the petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

In determining whether trial counsel's performance was deficient, this court has held that a "petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings." Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). "[D]eference to tactical choices only applies if the choices are informed ones based upon adequate preparation." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). An attorney's performance must be measured against the general standard of whether the services rendered were "within the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975).

*II. Failure to Communicate*

The Petitioner's arguments on appeal are based solely upon her testimony at the post-conviction hearing. However, the trial court accredited the testimony of trial counsel over the Petitioner's testimony. The evidence at the post-conviction hearing established that trial counsel met with the Petitioner on several occasions, wrote her several letters, and spoke weekly with her parents. Trial counsel testified that he discussed with the Petitioner the charges against her, the possible sentencing ranges, the discovery provided by the State, his trial strategy, whether she should testify, what witnesses to call, and the plea offers made by the State. Nothing in the record preponderates against the post-conviction court's findings regarding this issue. Accordingly, we conclude that this issue is without merit.

*III. Failure to Call Witnesses*

We agree with the post-conviction court's conclusion that trial counsel's decision not to call Mr. Shelton as a witness was a tactical decision which should not be second guessed. Trial counsel based his trial strategy on the fact that none of the victims could identify the Petitioner. The only evidence directly connecting the Petitioner to the offenses was the

testimony of a co-defendant and the Petitioner's statement to the police. Trial counsel testified that Mr. Shelton told him the Petitioner was driving her green Ford Explorer when the offenses occurred but that she was unaware of what was happening. Trial counsel made a tactical decision not to call Mr. Shelton because his testimony would have further corroborated the evidence placing the Petitioner in the Ford Explorer.

Furthermore, the Petitioner cannot establish that she was prejudiced by trial counsel's decision not to call Mr. Shelton as a witness. At the time, Mr. Shelton was the Petitioner's boyfriend. His testimony at the post-conviction hearing that the Petitioner was not present during the offenses contradicted his prior statement to trial counsel that the Petitioner was present but not aware of what was going on. Additionally, the Petitioner was adamant in her statement to the police that her boyfriend, Mr. Shelton, was not present during the commission of the offenses. As such, it is unlikely that a jury would have found Mr. Shelton's testimony credible or would have accredited it over the evidence of the Petitioner's guilt. Accordingly, we conclude that this issue has no merit.

With respect to the Petitioner's claims regarding Ms. Dunn and her parents, none of these potential witnesses testified at the post-conviction hearing. This court has long held that "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). This is the only way the Petitioner can establish that failure "to call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner." Id. We cannot speculate as to what a witness may have said if presented or how the witness may have responded to a rigorous cross-examination. Id. Accordingly, we conclude that the Petitioner has failed to establish her claims regarding these witnesses by clear and convincing evidence.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE